UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| ISAIAH N. WILLIAMS,<br><br>    Plaintiff,<br> v.<br>D. WILLIAMS,<br><br>    Defendant.<br>_____/ | No. C 07-04464 CW (LB)<br><br>**SECOND ORDER RE DISCOVERY SUBMITTED FOR *IN CAMERA* REVIEW**<br><br>ECF Nos. 54 and 60 |

**I. INTRODUCTION**

This case involves Plaintiff Isaiah Williams's claims that Debra Williams, a prison guard at Pelican Bay State Prison, manifested deliberate indifference to his safety and used excessive force in violation of the Eighth Amendment and 42 U.S.C. § 1983 during an incident in 2006 that allegedly resulted in a fight between Plaintiff and another inmate and Defendant's shooting Plaintiff four times with impact rounds. *See* Complaint, ECF No. 1 at 7.[1] The district court referred discovery disputes to this court.

The court orders disclosure of the answers and certain portions of the post order and use-of-force policy (identified by bates range) based on its own review of the answers and documents because – despite a court order directing Defendant to identify specific objections and provide legal argument for its positions – Defendant made only general objections. The court thus reviewed the information

---

[1] Citations are to the Clerk's Electronic Case File (ECF) with pin cites to numbers at the top (as opposed to the bottom) of the page.

SECOND ORDER RE DISCOVERY (C 07-04464 CW (LB))

itself, identified a narrower range of discoverable information, and orders it disclosed. Given potential security concerns, the court gives Defendant a final opportunity to make specific objections to and legal argument about the document production. Defendant may file a letter brief no later than March 4, 2011.

## II. FACTS ABOUT PENDING DISCOVERY DISPUTES

The district court directed Defendant to produce for *in camera* review all excessive force complaints within the last five years and her answers to certain interrogatories about excessive force and the incident. ECF No. 54 at 2-4 (these may be relevant to Plaintiff's excessive force claim but *in camera* review will address any assertions of privilege). Those interrogatories are as follows:

(1) Has the defendant ever threatened or been accused of threatening an inmate in any way while working as a correctional officer?

(2) What did the defendant mean and what was her intent when she told the plaintiff on August 12, 2006: "we can play this any way you want." And "Aren't you up for inactive"?

(5) To the defendant's knowledge, what relationship exists between white and black inmates? Does she agree that these two groups have a history of violence between each other.

(8) Why did the defendant, after shooting the plaintiff the first time, ignore orders by the ground level officers to open the section door, which would allow them to quell the incident with less harmful force, and instead reload her weapon (3) additional times and shoot the plaintiff?

(9) How many shooting has the defendant been involved in while acting as the control booth operator? Of these incidents, how many was the defendant the sole control booth operater [sic]? Were any complaints made against the defendant for any of these incidents?

(10) Has the defendant ever intentionally or been accused of intentionally setting up an altercation of any kind between inmates while working as a correctional officer?

(11) Has the defendant ever retaliated or been accused of retaliation of any kind while working as a correction officer?

(12) On September 3, 2006 did the defendant, instead of doing her duty and asking the plaintiff if he would like to attend his 115 hearing, ask the plaintiff "Have you gone to your 115 hearing yet?", and when plaintiff stated: "No", did the defendant ask him: "Do you have anything you want to say to me"?

(13) On September 3, 2006 did the defendant tell correctional officer M. Potter that the plaintiff refused to attend his 115 hearing and that he refused to sign the refusal form?

SECOND ORDER RE DISCOVERY (C 07-04464 CW (LB))
2

ECF No. 54 at 3-4.

Plaintiff's interrogatories sought information about control booth procedures, and Plaintiff also requested all documents about control booth procedures as follows:

> Interrogatories
>
> (3) What were the procedures on August 16, 2006 regarding the Control Booth operator's duties involving inmate movement?
>
> (4) What were the acceptable methods available to control Booth operators on and up to August 16, 2006; e.g. cups used to cover the release button/ cell button of inmate cells, which were used by correctional officers while doing their duties? What were the methods used by the defendant on and up to August 16, 2006?
>
> (6) What were the procedures for use of force by a correctional officer during an incident particularly by a control Booth operator, on and up to August 16, 2006?
>
> Document Request
>
> (4) Any and all documents pertaining to the rules and procedures, as well as acceptable methods used by control Booth Operators regarding inmate movement and use of force.

ECF No. 54 at 5. The district court granted these requests but directed Defendant to submit the answers and documents for *in camera* review to address any security concerns. *Id.*

On December 23, 2010, Defendant submitted the following for *in camera* review: (A) her responses to all interrogatories; (B) her responses to the document requests for excessive force complaints in the last five years, answering that no complaints had been made; and (C) her response to document request four regarding use of force procedures by control booth operators, providing a copy of the Post Order that discusses a control booth officer's responsibilities, duties, and responses both in daily and emergency situations. On December 27, 2010, Defendant provided a second response to document request four, providing a copy of Pelican Bay State Prison's use of force policy.

Defendant provided no briefing about any privileges or safety concerns. Based on the generic and innocuous responses to interrogatories, the court concluded that Defendant had withdrawn her objections to most interrogatories. *See* 1/7/11 Order, ECF No. 56 at 1-2. The court directed Defendant to file a letter brief identifying any privileges or safety concerns she was asserting, gave

an example of documents raising a potential security concern (the documents about internal security), and instructed Defendant that she must identify the specific documents at issue and cite legal authority that the documents should not be produced. *See id.* at 2.

On January 25, 2011, Defendant submitted a two-and-one-half page letter brief asserting – without citation to any legal authority – general objections to production of the post order and excessive force policy and a generic objection to responses to the interrogatories "[f]or the same reasons." ECF No. 60.

## III.  ORDERS ON PENDING DISCOVERY DISPUTES

In her letter brief, and without citing any legal authority, Defendant argues the following: (1) most of the use of force policy involves situations other than inmate fighting, so only a small portion of the policy is relevant, and in any event, Plaintiff does not allege that the policy itself is unconstitutional; (2) requirements of security are paramount, and inmates are not privy to policies like the post order and use of force policy because – for example – they might plan accordingly if they knew how many guards were assigned to a position or assigned to respond to an incident; and (3) "[f]or the same reasons, the disclosure of defendants' response to the Special Interrogatories submitted to the Court for *in camera* review should not be permitted."

The court addresses first the answers to the interrogatories and then the objections to the documents.

### A.  Interrogatories (Including Responses Regarding Excessive Force Complaints)

Defendant argues that the answers to the interrogatories should not be produced but – except for cross-referencing the arguments about security concerns and the irrelevance of most of the use-of-force policy – does not say why. *See* ECF No. 60 at 2 ("[f]or the same reason," disclosure should not be permitted).  The court previously ordered Defendant to identify specifically what information implicated security or privileged information and cite legal authority supporting her position that documents or answers were protected from production. *See* ECF No. 56 at 1-2.  Given Defendant's failure to identify specific information, the court reviewed the answers, finds them innocuous, and orders their disclosure.

The answers to the interrogatories generally are about the incident and create no issues about

institutional security or are innocuous. For example, interrogatories 1, 9, 10, and 11 asked about whether Defendant had ever been accused of threatening an inmate, been involved in a shooting before, or been accused of retaliation.  The answer was no to all of these.  Interrogatories 2, 12, and 13 involved statements either by Plaintiff or Defendant on the date of the incident, and the answers are just about whether the statements were made (sometimes yes and sometimes no).  Interrogatory 5 questions whether black inmates and white inmates have a history of violence, and the answer is generic.

The answers to interrogatories 3, 4, and 6 refer to – and do not quote or characterize – the post order.  Thus, the answers themselves do not raise security concerns.  (The court addresses disclosure of the post order itself in the next section.)   There are short additional answers for interrogatories 4 and 6 that are entirely generic.  Similarly, interrogatory 8 and the response to it are only fact issues about the incident and a generic statement about how control booth operators operate.

There is nothing in any of these responses that suggest privilege or safety issues.  Also, despite the precise direction in the court's January 7, 2011 order, *see* ECF No. 56 at 2, Defendant did not identify the parts of her answers that were problematic or cite any legal authority.  The court assumes that if Defendant had specific concerns, she would have identified them.  In addition, the information is discoverable.  Some answers are about the incident, and thus they are relevant.  Other information is relevant to the claims of excessive force, and courts routinely allow disclosure of the information even when prison officials assert privilege.  *See, e.g., Soto v. City of Concord*, 162 F.R.D. 603, 614-15 (N.D. Cal. 1995) ("information [from personnel files] may lead to evidence of a continuing course of conduct reflecting malicious intent" or "reveal the defendant officers' patterns of behavior as well as [their agency's] response to such behavior"); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992); *Baker v. Hatch*, No. C 07 2204 FCD EFB, 2010 WL 3212859, at *3-*4 (E.D. Cal. Aug. 12, 2010); *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal.1987). Defendant has not identified any parts of the answers that are potentially privileged or protected to allow the court to reach a different result.

Accordingly, the court orders Defendant to disclose her responses to the interrogatories.

///

### B. Objection to Excessive Force Policy and Post Order

In objecting to disclosure of the post order and the use of force policy, Defendant makes the following arguments: (1) most of the use of force policy involves situations other than inmate fighting, so only a small portion of the policy is relevant, and in any event, Plaintiff does not allege that the policy itself is unconstitutional; and (2) requirements of security are paramount, and inmates are not privy to policies like the post order and use of force policy because – for example – they might plan accordingly if they knew how many guards were assigned to a position or assigned to respond to an incident. ECF No. 60 at 2-3 (also noting that Defendant disagrees with the district court's conclusion that the information is discoverable).

For the relevance analysis, the specific parts of the document requests at issue are as follows:

(2) . . . anything that could be deemed relevant to the allegations made by Plaintiff in this case.

(4) Any and all documents pertaining to the rules and procedures, as well as acceptable methods used by control booth operators regarding inmate movement and use of force.

Turning first to the post order, it sets forth a control booth officer's duties and responsibilities covering daily activities like showers and yard access, and it also sets forth emergency response procedures. Some of the information arguably raises a security concern, such as the paragraph at the top of the page bates-stamped M-00167, which also does not appear to be relevant. Other information appears innocuous, such as the time schedule on the page bates-stamped M-00167. Similarly, the information on the page bates-stamped M-00166 (from the top of the page down through the bullet points) sets forth responsibilities about inmates' daily activities and does not appear to raise any security concerns. Indeed, to the extent these are rules about inmates' activities, presumably they know them separately. General information about daily responsibilities might be relevant to addressing whether a guard's conduct deviated from those procedures, in the same way that training in areas related to the specific incident (like training in the use of force) can be relevant and producible. *See Hernandez v. City of Napa*, No. C 09 02782 EDL, 2010 WL 3001369, at \*4 (N.D. Cal. July 29, 2010). That same analysis might apply to the bottom paragraph on the page bates-stamped M-00166 about alarm response. Parenthetically, the court observes that the only reference to use of force is a cross-reference (without discussion) of the use-of-force policy.

1    The court agrees that emergency response procedures like the one identified in the previous paragraph might raise security concerns. But courts have redacted such information and allowed production of post orders insofar as they relate to general responsibilities. *See, e.g.*, *Mitchell v. Adams*, No. C 06 2321 GEB GGH, 2009 WL 674348, at *11 (E.D. Cal. Mar. 6, 2009) (responsibilities regarding inmate housing assignments but not emergency response protocols); *Dickey v. Churray*, No. C 03 2215 MCE PAN, 2006 WL 1153796, at *2 (E.D. Cal. May 2, 2006) (procedures for monitoring yard). The problem here is that the court is guessing at the objections that Defendant might raise, given that she only asserted a general concern about safety. That concern really is directed only to the paragraph at the top of the page bates-stamped M-00167, which Defendant may redact. Defendant may redact information about keys (the last three sentences of the paragraph beginning "1400" on the page bates-stamped M-00167) as irrelevant and potentially implicating security concerns. Otherwise, the post order should be disclosed.

As to the use-of-force policy, Defendant argued that only certain portions of the policy were relevant, but Defendant did not identify the relevant or irrelevant portions in the over-sixty-page document that she submitted for *in camera* review, and she cited no legal authority supporting her position, even though the court instructed her to do so. The problem again is that the court has to guess at Defendant's security objections given that courts do order disclosure of excessive force policies narrowed to exclude information that raises security concerns. *See, e.g., Jacobs v. Scribner*, No. C 06 01280 AWI GSA, 2009 WL 3157533, at *4 (E.D. Cal. Sept. 25, 2009).

Here, the excessive force policy itself (pages bates-stamped M-00168 to M-00173) is the category of information that courts order to be disclosed, and it does not appear to raise security concerns. The procedures (M-00175 to M-00229) mostly are irrelevant because they are about unrelated situations (like chemical agents, for example), and producing the procedures may raise security concerns. The most relevant portions appear to be the sections on immediate force and in-cell assaults (M-00176 to M-00178). Again, they are the kinds of procedures that courts order disclosed, and they do not appear to raise security concerns because they are mostly definitions of general responsibilities (as opposed to the security-sensitive information that courts protect against disclosure). *See United States v. Williams*, 791 F.2d 1383, 1387 (9th Cir. 1986) (upholding district

court's determination that Bureau of Prisons' procedures about escape prevention measures were sensitive information about security that were not sufficiently material to be disclosed); *Ibanez v. Miller*, No. C 06 2668 JAM EFB, 2009 WL 3481679, *2-*3 (E.D. Cal. Oct. 22, 2009) (discovery request for alarm procedures might undermine safety and security of prison; relevance to case was attenuated). Other potentially relevant portions are the procedures on reporting allegations of unnecessary force and the sections in "Reporting, Evaluating, and Monitoring Force" about the employee's (here, the Defendant's) reporting requirements (M-00194 to M-00199). These procedures do not appear to implicate security concerns either and are akin to the training procedures found relevant and disclosable in *Hernandez*. *See* 2010 WL 3001369 at *4.

Accordingly, the court orders disclosure of these portions of the excessive force policy.

In sum, the portions of the post order and excessive force policy are relevant and do not appear to implicate any security concerns. But given that the court is guessing about Defendant's relevance and security objections, the court gives Defendant one final opportunity to file objections to the document productions. As the court instructed in its January 7 order, Defendant must identify the specific portions at issue and cite legal authority that the documents should not be produced. *See* ECF No. 56 at 2. (The court observes that it is easy to identify by measures such as highlighting any specific portions that Defendant asserts ought to be redacted.) The letter brief must be filed no later than March 4, 2010.

## IV.  CONCLUSION

Defendant shall provide its answers and document responses in the manner set forth in the previous sections. To the extent that Defendant still objects to the court's narrower document productions, Defendant may file a letter brief with specific objections and legal argument no later than March 4, 2010.

This disposes of ECF Nos. 54 and 60.

**IT IS SO ORDERED.**

Dated: February 22, 2011

_____
LAUREL BEELER
United States Magistrate Judge