UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| ISAIAH N. WILLIAMS,<br><br>               Plaintiff,<br>    v.<br>D. WILLIAMS,<br><br>               Defendant.<br>_____/ | No. C 07-04464 CW (LB)<br><br>**THIRD ORDER RE DISCOVERY SUBMITTED FOR *IN CAMERA* REVIEW**<br><br>ECF Nos. 54, 60, and 63 |

### I. INTRODUCTION

This case involves Plaintiff Isaiah Williams's claims that Debra Williams, a prison guard at Pelican Bay State Prison, manifested deliberate indifference to his safety and used excessive force in violation of the Eighth Amendment and 42 U.S.C. § 1983 during an incident in 2006 that allegedly resulted in a fight between Plaintiff and another inmate and Defendant's shooting Plaintiff four times with impact rounds. *See* Complaint, ECF No. 1 at 7.[1] The district court referred discovery disputes to this court. ECF No. 54 at 5. After two rounds of briefing, the undersigned orders disclosure of the answers and, subject to the attached protective order, certain portions of the post order and use-of-force policy (identified by bates range).

### II. FACTS ABOUT PENDING DISCOVERY DISPUTES

The district court directed Defendant to produce for *in camera* review all excessive force

---

[1] Citations are to the Clerk's Electronic Case File (ECF) with pin cites to numbers at the top (as opposed to the bottom) of the page.

complaints within the last five years and her answers to certain interrogatories about excessive force and the incident. ECF No. 54 at 2-4 (these may be relevant to Plaintiff's excessive force claim but *in camera* review will address any assertions of privilege). Those interrogatories are as follows:

>   (1)  Has the defendant ever threatened or been accused of threatening an inmate in any way while working as a correctional officer?
>
>   (2)  What did the defendant mean and what was her intent when she told the plaintiff on August 12, 2006: "we can play this any way you want." And "Aren't you up for inactive"?
>
>   (5)  To the defendant's knowledge, what relationship exists between white and black inmates? Does she agree that these two groups have a history of violence between each other.
>
>   (8)  Why did the defendant, after shooting the plaintiff the first time, ignore orders by the ground level officers to open the section door, which would allow them to quell the incident with less harmful force, and instead reload her weapon (3) additional times and shoot the plaintiff?
>
>   (9)  How many shooting has the defendant been involved in while acting as the control booth operator? Of these incidents, how many was the defendant the sole control booth operater [sic]? Were any complaints made against the defendant for any of these incidents?
>
>   (10) Has the defendant ever intentionally or been accused of intentionally setting up an altercation of any kind between inmates while working as a correctional officer?
>
>   (11) Has the defendant ever retaliated or been accused of retaliation of any kind while working as a correction officer?
>
>   (12) On September 3, 2006 did the defendant, instead of doing her duty and asking the plaintiff if he would like to attend his 115 hearing, ask the plaintiff "Have you gone to your 115 hearing yet?", and when plaintiff stated: "No", did the defendant ask him: "Do you have anything you want to say to me"?
>
>   (13) On September 3, 2006 did the defendant tell correctional officer M. Potter that the plaintiff refused to attend his 115 hearing and that he refused to sign the refusal form?

ECF No. 54 at 3-4.

Plaintiff also requested all documents about control booth procedures as follows:

Document Request

>   (4)  Any and all documents pertaining to the rules and procedures, as well as acceptable methods used by control Booth Operators regarding inmate movement and use of force.

ECF No. 54 at 5. The district court granted these requests but directed Defendant to submit the answers and documents for *in camera* review to address any security concerns. *Id.*

THIRD ORDER RE DISCOVERY (C 07-04464 CW (LB))

2

1    In late December 2010, Defendant submitted the following responses for *in camera* review: (A) her responses to all interrogatories; (B) her responses to the document requests for excessive force complaints in the last five years, answering that no complaints had been made; (C) her response to document request four regarding use of force procedures by control booth operators, providing a copy of Post Order 392322, which discusses a control booth officer's responsibilities, duties, and responses both in daily and emergency situations, and; (D) a copy of Pelican Bay State Prison's use of force policy.

   Defendant provided no briefing about any privileges or safety concerns. The court directed Defendant to file a letter brief identifying any privileges or safety concerns she was asserting, gave an example of documents raising a potential security concern (the documents about internal security), and instructed Defendant that she must identify the specific documents at issue and cite legal authority that the documents should not be produced. 1/7/11 Order, ECF No. 56 at 2.

   On January 25, 2011, Defendant submitted a two-and-one-half page letter brief asserting – without citation to any legal authority – general objections to production of the post order and excessive force policy. First Letter Brief, ECF No. 60.

   On February 23, 2011, the undersigned ordered Defendant to disclose Post Order 392322 with certain information redacted. 2/23/11 Amended Second Order, ECF No. 62 at 7. The undersigned also identified portions of the use of force policy and procedures that were relevant and did not implicate security concerns and, thus, the undersigned ordered those sections disclosed too. *Id.* at 7-8. Finally, the undersigned ordered the Defendant to file a second letter brief by March 4, 2011 with "specific objections and legal argument," if any remained. *Id.* at 8.

   On March 4, 2011, Defendant filed a second letter brief. ECF No. 63.

### III. ORDERS ON PENDING DISCOVERY DISPUTES

   In her second letter brief, Defendant: (1) asserts no objections to the disclosure of the answers to Plaintiff's interrogatories; (2) requests that certain information in Post Order 392322 be redacted; (3) reiterates the security concerns associated with disclosure of the prison's use of force policy, and; (4) asks the court to issue a protective order. ECF No. 63 at 1-3.

///

### 1. Response to Interrogatories

Plaintiff's interrogatories sought information about control booth procedures. ECF No. 54 at 3-4. The undersigned directed Defendant to produce her responses to Plaintiff's interrogatories. 2/23/11 Amended Second Order, ECF No. 62 at 5. In her second letter brief, Defendant stated that she has no objection to this and will comply with the court's previous order. ECF No. 63 at 1.

### 2. Proposed Redaction

Defendant requests that the court grant it permission to redact the Hours of Duty and Regular Days Off information contained on the page bates-stamped M-00165 of Post Order 392322, which sets forth a control booth officer's duties and responsibilities. Second Letter Brief, ECF No. 63 at 1. Defendant claims that the information implicates institutional security. *Id.*

Defendant may redact the information given the asserted security concern and the minimal probative value of the information. *See, e.g.*, *Mitchell v. Adams*, No. C 06 2321 GEB GGH, 2009 WL 674348, at *11 (E.D. Cal. Mar. 6, 2009) (ordering disclosure of post orders detailing responsibilities regarding inmate housing assignments but permitting redaction of any emergency response protocols contained therein).

### 3. Security Arguments Regarding the Disclosure of the Use of Force Policy

Defendant notes that she "has objected" to the disclosure of the Use of Force Policy on the grounds that the information is confidential and that its disclosure could "pose a threat to the safety and security of inmates, correctional officers and staff at Pelican Bay State Prison." Second Letter Brief, ECF No. 63 at 1. Defendant asserts that prison officials have a "compelling interest in maintaining prison security, order and discipline." *Id.* (citing *Hunter v. Baldruin*, 78 F.3d 593 (Table) (9th Cir. 1996); *United States v. Williams*, 791 F.2d 1383,1387 (9th Cir. 1986). Defendant explains that the disclosure of the documents sought by Plaintiff pose a significant security risk as "legitimate penological efforts could be frustrated, and the lives of officers could be endangered, if anyone who wanted to could learn details about how officers are trained to accomplish their missions in specific situations. *Id.* at 2. Defendant also argues that "[m]aterial of this nature reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. *Id.* (citing *Thornburg v. Abbott*, 490 U.S. 401, 412-413 (1989)).

THIRD ORDER RE DISCOVERY (C 07-04464 CW (LB))
4

1   To the extent that Defendant maintains her objection to the disclosure of the limited sections of
2   the use of force policy ordered disclosed in the undersigned's 2/23/11 order, Defendant has not
3   advanced any arguments that make the undersigned reconsider her position that the identified
4   sections do not appear to implicate security concerns and are akin to other prison materials that
5   courts have ordered disclosed. *See, e.g., Hernandez v. City of Napa*, No. C-09-02782 EDL, 2010
6   WL 3001369, at *4 (N.D. Cal. July 29, 2010). Accordingly, the court orders disclosure of those
7   portions of the excessive force policy identified in the 2/23/11 order. Specifically, Defendant is
8   ordered to disclose: the use of force policy itself (M-00168 to M-00173); the sections on immediate
9   force and in-cell assaults (M-00176 to M-00178), and; the procedures on reporting allegations of
10  unnecessary force and the sections in "Reporting, Evaluating, and Monitoring Force" about the
11  employee's (here, the Defendant's) reporting requirements (M-00194 to M-00199). 2/23/11
12  Amended Second Order, ECF No. 62 at 7-8.
13  Defendant's arguments really are geared toward the appropriateness of a protective order. *See*
14  ECF No. 63 at 2. As discussed in the next section, the court agrees that a protective order is
15  appropriate.

### 4. Proposed Protective Order

17  Protective orders provide a safeguard for parties and other persons in light of the otherwise broad
18  reach of discovery. *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368–369
19  (9th Cir. 1982). Upon motion by a person responding to a discovery request, the court "may, for
20  good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression,
21  or undue burden or expense." Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking
22  protection bears the burden of showing specific prejudice or harm will result if no protective order is
23  granted." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir.2002); *see also*
24  *Blankenship v. Hearst Corp.*, 519 F2d 418, 429 (9th Cir. 1975).
25  Defendant requests that the court issue a protective order. Second Letter Brief, ECF No. 63 at 3.
26  The proposed protective order is modeled after the district's model stipulated protective order. *Id.*
27  To justify her request, Defendant asserts security concerns associated with the release of the
28  requested documents to a current inmate. *Id.* at 1. Defendant specifically argues that "the lives of

THIRD ORDER RE DISCOVERY (C 07-04464 CW (LB))
5

officers could be endangered, if anyone who wanted to could learn details about how officers are trained to accomplish their missions in specific situations." *Id.* at 2.  Defendant also notes that Plaintiff is not represented by counsel, which removes the option of limiting disclosure to inmate's counsel to mitigate the security concern. *Id.* Defendant suggests that a protective order would limit the probability of the information be disseminated to the general inmate population at Pelican Bay State Prison. *Id.* at 2.

The court finds that Defendant has shown good cause for granting a protective order. *See Hernandez*, 2010 WL 3001369 at *4) (ordering prison training documents disclosed subject to a protective order).  Accordingly, the court orders disclosure only if Plaintiff signs the proposed protective order currently filed in the clerk's record at ECF No. 63-1.

## IV. CONCLUSION

Defendant may redact the identified information contained with the Post Order.  Defendant shall provide its answers and document responses in the manner set forth in the previous sections. Defendant must produce the use-of-force policy only if Plaintiff signs the protective order at ECF No. 63-1.

This disposes of ECF Nos. 54, 60, and 63.

**IT IS SO ORDERED.**

Dated: March 10, 2011

_____
LAUREL BEELER
United States Magistrate Judge