IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>ISAIAH NOEL WILLIAMS,</td><td>)</td><td>No. C 07-04464 CW (PR)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>            Plaintiff,</td><td>)</td><td>ORDER GRANTING PLAINTIFF'S MOTION TO</td></tr>
<tr><td></td><td>)</td><td>AMEND COMPLAINT; GRANTING IN PART AND</td></tr>
<tr><td>    v.</td><td>)</td><td>DENYING IN PART DEFENDANT'S MOTION</td></tr>
<tr><td></td><td>)</td><td>FOR SUMMARY JUDGMENT; REFERRING CASE</td></tr>
<tr><td>D. WILLIAMS,</td><td>)</td><td>TO PRO SE PRISONER SETTLEMENT PROGRAM</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>            Defendant.</td><td>)</td><td>(Docket nos. 66 & 74)</td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
</table>

United States District Court<br>For the Northern District of California

INTRODUCTION

Plaintiff Isaiah Noel Williams, a state prisoner, filed this pro se civil rights action under 42 U.S.C. § 1983, concerning events that occurred at Pelican Bay State Prison (PBSP) in 2006. In an Order dated January 21, 2010, the Court found cognizable Plaintiff's claims that Defendant PBSP Correctional Officer Debra Williams (1) violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to his safety and using excessive force against him, (2) retaliated against Plaintiff for the exercise of his First Amendment rights, and (3) violated Plaintiff's right to due process in connection with a disciplinary hearing.

Two motions are pending before the Court.  First, Plaintiff has moved to amend the complaint to add verification.  Defendant has filed a statement of non-opposition to this motion.  Second, Defendant has moved for summary judgment.  Plaintiff has opposed the motion and Defendant has filed a reply.  For the reasons discussed below, Plaintiff's motion to amend the complaint is GRANTED and Defendant's motion for summary judgment is DENIED.

//

STATEMENT OF FACTS

The following facts are undisputed unless otherwise noted.

At all times relevant to the events at issue, Plaintiff, who has been validated as a member of the Nazi Low Riders gang, was incarcerated in the Security Housing Unit, Facility D-01, at PBSP. Deposition of Isaiah Williams (Pl.'s Dep.) at 115:9-18; Complaint (Compl.) at 1.

Plaintiff alleges that on August 12, 2006, Defendant conducted a search of his cell and threw out several items, including some school books. Compl. at 3A. Defendant admits she conducted the search, but denies throwing away Plaintiff's property. Answer to Complaint at 2. Plaintiff told Defendant that her actions were "excessive" and he planned to file an administrative grievance against her. Compl. at 3B. According to Plaintiff, Defendant angrily responded, "We can play this any way you want," and asked, "Aren't you up for inactive?" Id. Plaintiff alleges that the latter question referred to Plaintiff's opportunity, as a validated gang member, to earn inactive gang member status and return to the general population, and that "Defendant was threatening to create a situation that would be used to deny [him] inactive status." Id. at 3B-3C. Defendant admits that Plaintiff stated his intent to file a grievance, but denies that she was angry or that she threatened him. Answer at 2.

Four days later, on August 16, 2006, Defendant was the control booth officer in Facility D-01. One of Defendant's responsibilities as control booth officer was to let inmates in and out of their cells, one at a time, to use the showers. Compl. at 3C, Rules Violation Report (RVR). On that day another inmate,

Powell,[1] a validated member of the Black Guerilla Family gang, was returning to his cell from the showers.  Powell was Plaintiff's neighbor.  Before Powell reached his cell, Defendant opened Plaintiff's cell door, thereby allowing the two inmates to be in the same physical space at the same time.  Id.; Def.'s Dec. ¶ 2. Plaintiff claims Defendant created this situation intending that Plaintiff would have an altercation with Powell, so Plaintiff would be found ineligible for inactive gang status.  Compl. at 3C-3D. Plaintiff further alleges that "it is widely known among correctional officers that there is a history of assaultive behavior between white and black inmates."  Id. at 3C.  Defendant asserts she mistakenly opened Plaintiff's cell door, and by the time she realized her mistake Plaintiff was out of his cell. Def.'s Dec. ¶ 2.

A fight ensued between Plaintiff and Powell.  Def.'s Dec. ¶ 3. Defendant ordered the inmates to "get down," and Plaintiff did not comply.  Id. ¶ 2.  Plaintiff states Defendant shot him one time with a 40mm exact impact gun,[2] yet the inmates continued to fight. Compl. at 3D.  Plaintiff alleges Sgt. Heggerstrom then ordered Defendant to open the section door so additional officers could enter and assist, but Defendant initially refused to open the door and, instead, fired three additional rounds, and then opened the door.  Id.  Plaintiff claims Defendant's use of exact impact rounds was excessive and the final three rounds were also unnecessary.

_____

[1] The parties' filings do not reveal inmate Powell's first name.

[2] Exact impact rounds are non-lethal rubber bullets.  See Pl.'s Dep. at 61:7-14.

3

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

Compl. at 3D.  Defendant, however, asserts that her use of force
was not excessive, she had fired all four exact impact rounds
before Sgt. Heggerstrom ordered her to open the door, and she did
not intend to hurt Plaintiff.  Def.'s Dec. ¶¶ 5-6.

When Defendant opened the door, the entering officers sprayed
Plaintiff and Powell with a chemical agent.  Plaintiff complied
with the officers' orders to lie face down, and both inmates were
decontaminated and re-housed.  Def.'s Dec. ¶ 5; RVR.  Plaintiff
alleges ongoing psychological and physical suffering as a result of
this incident.  Compl. at 3D.

As a consequence of these events, Plaintiff was charged with a
rules violation of battery on a prisoner resulting in no serious
injury.  RVR.  He alleges, however, that on September 3, 2006,
Defendant denied him access to the disciplinary hearing relating to
the August 16 incident.  Compl. at 3D-3F; Plaintiff's Response to
the Motion for Summary Judgment (Opp'n) at 2.  Specifically, he
asserts that on that day Defendant approached his cell, asked him
whether he had gone to the disciplinary hearing, and then asked him
whether he had "anything to say" to her.  Id.  Plaintiff asserts he
replied, "No," and walked to the back of his cell.  Id.  Plaintiff
alleges Defendant never asked him whether he intended to attend the
disciplinary hearing, he never refused to attend and Defendant
prevented him from attending.  Id.  The RVR, which is attached to
the complaint and bears the signatures of Defendant and Officer
Potter, a witness to Plaintiff's purported refusal, states that
Plaintiff declined to attend the hearing and refused to sign the
form confirming his decision not to attend.  RVR.

At the disciplinary hearing Plaintiff was found guilty, in

4

absentia, of battery on a prisoner with no serious injury.  He was
assessed a forfeiture of ninety days of good time credit.  RVR.

Having exhausted his administrative remedies, Plaintiff filed
the complaint in this action on August 28, 2007.

LEGAL STANDARD

I.   Summary Judgment

Summary judgment is only proper where the pleadings, discovery
and affidavits show that there is "no genuine issue as to any
material fact and that the moving party is entitled to judgment as
a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those
that may affect the outcome of the case.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material
fact is genuine if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party.   Id.

The court will grant summary judgment "against a party who
fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Celotex Corp. v. Catrett,
477 U.S. 317, 322-23 (1986); see also Anderson, 477 U.S. at 248
(holding fact to be material if it might affect outcome of suit
under governing law).  The moving party bears the initial burden of
identifying those portions of the record that demonstrate the
absence of a genuine issue of material fact.  The burden then
shifts to the nonmoving party to "go beyond the pleadings, and by
his own affidavits, or by the 'depositions, answers to
interrogatories, or admissions on file,' designate 'specific facts
showing that there is a genuine issue for trial.'"  Celotex, 477
U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

United States District Court
For the Northern District of California

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  On a summary judgment motion, the court is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

II.  Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

As discussed below, because the Court grants Plaintiff's motion to amend the complaint, the complaint is verified. Therefore, for the purposes of this Order, the Court will treat the complaint as an affidavit in opposition to Defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

In Defendant's reply to the opposition to the motion for summary judgment she generally objects to Plaintiff's declaration, which is attached to the opposition.  Defendant does not direct the Court to the specific portions of the declaration to which she objects.  Plaintiff's declaration is consistent with his complaint. For purposes of ruling on the motion for summary judgment, the

United States District Court

For the Northern District of California

1  Court only considers Plaintiff's allegations of fact.  The Court

2  does not accept as true Plaintiff's legal conclusions or portions

3  of his declaration or complaint that are inadmissible.

4      Defendant further objects to Plaintiff's witness declarations.

5  The Court is able to reach a determination on the motion for

6  summary judgment without considering these declarations.

7                              DISCUSSION

8  I.   Motion to Amend the Complaint

9      "[A] party may amend its pleading only with the opposing

10  party's written consent or the court's leave."  See Fed. R. Civ. P.

11  15(a)(2).  Because Defendant has filed a statement of

12  non-opposition to the motion to amend, the motion is GRANTED and

13  Plaintiff's complaint is deemed verified for evidentiary purposes.

14  II.  Motion for Summary Judgment

15      A.   Eighth Amendment Claims

16          1.   Deliberate Indifference to Safety

17      Plaintiff claims Defendant was deliberately indifferent to his

18  safety, in violation of his Eighth Amendment rights, when she

19  allowed him and Powell into the same physical space.

20      The Eighth Amendment requires that prison officials take

21  reasonable measures to guarantee the safety of prisoners.  Farmer

22  v. Brennan, 511 U.S. 825, 832 (1994).  In particular, prison

23  officials have a duty to protect prisoners from violence at the

24  hands of other prisoners.  Id. at 833; Hearns v. Terhune, 413 F.3d

25  1036, 1040 (9th Cir. 2005).  The failure of prison officials to

26  protect inmates from attacks by other inmates violates the Eighth

27  Amendment only when two requirements are met: (1) the danger

28  alleged is, objectively, sufficiently serious and (2) the prison

official is, subjectively, deliberately indifferent to inmate

safety.  Farmer, 511 U.S. at 834; Hearns, 413 F.3d at 1040-41.

    An Eighth Amendment claimant need not show that a prison
official acted or failed to act believing that harm actually would
befall an inmate; it is enough that the official acted or failed to
act despite the official's knowledge of a substantial risk of
serious harm.  See Farmer, 511 U.S. at 837; see also Berg v.
Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (holding that a prison
official need not "believe to a moral certainty that one inmate
intends to attack another at a given place at a time certain before
that officer is obligated to take steps to prevent such an
assault.")  The deliberate indifference standard does not require
an express intent to punish.  See Haygood v. Younger, 769 F.2d
1350, 1354-55 (9th Cir. 1985) (en banc).

    Here, the question is whether there is a triable issue of
material fact as to Defendant's knowledge and alleged intentional
disregard of an excessive risk to Plaintiff's safety.

    Plaintiff has submitted uncontested evidence that Defendant
knew that allowing him and Powell into the same physical space
would create a substantial risk of serious harm.  Specifically,
Plaintiff has attached as Exhibit D to his opposition "Post Order
392322," which appears to be an order issued by the California
Department of Corrections and Rehabilitation (CDCR) regarding the
duties of a control booth officer at PBSP.  It states, in relevant
part: "Under no circumstances should two or more inmates be allowed
in the same area at the same time unless they are cellmates or
unless both inmates are under the control of staff and are in
mechanical restraints."  Further, Plaintiff has adduced evidence

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

that he and Powell were validated members of different gangs. On
this evidence, a jury reasonably could infer Defendant knew that
the situation she created was dangerous.

Whether Defendant intentionally disregarded a substantial risk
of serious harm to Plaintiff is a triable issue of material fact.
Supporting Plaintiff's contention that Defendant acted
intentionally is the temporal proximity between the incident and
Defendant's alleged threats just four days earlier. Defendant
asserts that her actions were merely negligent; however, the
Court's function on a summary judgment motion is not to make
credibility determinations or weigh conflicting evidence with
respect to a disputed material fact. See T.W. Elec. Serv., 809
F.2d at 630 (9th Cir. 1987).

Defendant urges the Court to grant summary judgment on the
deliberate indifference claim because Plaintiff has admitted that
he started the fight with Powell. Plaintiff's contention, however,
is not that he was injured by Powell, but that he was injured when
Defendant used force to stop the fight. Under Ninth Circuit case
law, Defendant can be held liable for Plaintiff's injury under a
theory of deliberate indifference if Plaintiff can prove that
Defendant's conduct was both the actual and proximate cause of his
injury. White v. Roper, 901 F.2d 1501, 1505 (9th Cir. 1990).
Defendant's conduct is an actual cause of Plaintiff's injury only
if the injury would not have occurred "but for" that conduct. Id.
Here, it is reasonable to infer that, but for Defendant having let
Plaintiff and Powell out of their cells at the same time, Plaintiff
would not have attacked Powell, Defendant would not have used force
to stop the fight, and Plaintiff would not have been injured by the

United States District Court

For the Northern District of California

use of force.  See id. at 1505-06 (finding prison guard's attempt to force prisoner into cell with dangerous inmate, which led to prisoner backing away, guard using force to subdue him and prisoner being injured thereby, was actual cause of prisoner's injury).

Once it is established that the defendant's conduct is one of the actual causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury, i.e., whether the defendant was the proximate cause of the injury.  Id. at 1506.  A defendant is not the proximate cause of the plaintiff's injury if another cause intervenes and supersedes the defendant's liability for the subsequent events. Id.  Here, one other cause of Plaintiff's injury was his attack on Powell.  But for this conduct, Defendant would not have had to use force to stop the fight, and Plaintiff would not have been injured by the use of force.  Thus, Plaintiff's conduct is an intervening cause of his injuries.  See id.

Whether Plaintiff's conduct supersedes Defendant's liability for the results of her own conduct, however, depends upon what was reasonably foreseeable to Defendant at that time.  Id.  When one person's conduct threatens another, "the normal efforts of the other to avert the threatened harm are not a superseding cause of harm resulting from such efforts . . . ."  Id. (quotation and citation omitted).  Thus, a plaintiff's conduct supersedes the defendant's conduct as the proximate cause of the plaintiff's injury "only if it was not within the original foreseeable risk that [the defendant] created and did not constitute 'normal efforts' to avert the threatened harm."  Id.  Whether a consequence was foreseeable and whether an intervening force was abnormal are

United States District Court

For the Northern District of California

1   to be decided as issues of fact are decided: if reasonable persons

2   could differ, summary judgment is inappropriate and the question

3   should be left to a jury.   Id.

4        Genuine issues of material fact exist as to whether

5   Plaintiff's conduct was a foreseeable and normal result of

6   Defendant having let him and Powell out of their cells at the same

7   time.  In particular, a reasonable jury could conclude that when

8   Defendant opened the cell door and Plaintiff, a validated member of

9   the Nazi Low Riders gang, found himself standing in close proximity

10  to Powell, a validated member of the Black Guerilla Family gang, he

11  had two alternatives: he could stand still and wait to see if

12  Powell would attack him, or he could assume Powell would attack him

13  and try to mitigate potential injury to himself by attacking Powell

14  first.  Because a reasonable jury could conclude that Plaintiff's

15  conduct was a foreseeable and normal response to Defendant's

16  conduct, a reasonable jury also could conclude that the injury

17  Plaintiff suffered as the result of his actions was foreseeable to

18  Defendant.  See id. (finding where reasonable jury could conclude

19  that prisoner's choice to back away from cell with dangerous

20  inmate, rather than comply with prison guard's attempt to force

21  prisoner to enter cell, was foreseeable and normal result of

22  guard's conduct, reasonable jury also could conclude that injury

23  prisoner suffered when guard used force to prevent him from running

24  away was foreseeable to guard).

25       In view of the competing evidence as to whether Defendant's

26  conduct was intentional, whether she knew her actions posed a

27  substantial risk of serious harm to Plaintiff, and whether such

28  conduct was the proximate cause of Plaintiff's injury, the motion

                                   11

for summary judgment is DENIED as to the deliberate indifference
claim.

                    2.   Excessive Force

     Plaintiff asserts Defendant used excessive force by firing
exact impact rounds at him.

     When prison officials stand accused of using excessive force
in violation of the Eighth Amendment, the core judicial inquiry is
whether force was applied in a good-faith effort to maintain or
restore discipline, or maliciously and sadistically to cause harm.
Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In this inquiry, a
court may consider the need for application of force, the
relationship between that need and the amount of force used, the
extent of any injury inflicted, the threat reasonably perceived by
the responsible officials, and any efforts made to temper the
severity of a forceful response.  Id. at 7.  A prisoner need not
allege that he suffered serious injury in order to establish an
Eighth Amendment violation.  Id.  Injury and force are only
imperfectly correlated, and it is the latter that ultimately
counts.  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010).

     The excessive force inquiry is very fact-specific.  Cf., e.g.,
Watts v. McKinney, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding
that kicking the genitals of a prisoner who was on the ground and
in handcuffs during an interrogation was "near the top of the list"
of acts taken with cruel and sadistic purpose to harm another);
Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)
(pepper-spraying fighting inmates a second time after hearing
coughing and gagging from first spraying was not malicious and
sadistic for purpose of causing harm, where initial shot of spray

12

had been blocked by inmates' bodies).

Summary judgment is inappropriate here because the parties have presented conflicting evidence as to whether Defendant's firing of exact impact shots was an appropriate level of force and, if it was, whether the final three shots were necessary.

First, if the factfinder determines that Defendant's firing of exact impact shots constitutes excessive force in this circumstance, it also reasonably could find that Defendant acted with the requisite malicious intent. See Hudson, 503 U.S. at 6-7. It is undisputed that Defendant fired the shots in response to a prison fight and, while Plaintiff does not claim that the use of force was altogether unnecessary, the question is whether Defendant chose a type of force that was excessive in this circumstance. Defendant has submitted evidence that it is her duty "to quell assaults as quickly as possible and to choose the type of force necessary to quell an assault with the least amount of injury." Def.'s Dec. ¶ 3. Defendant, however, has not explained why she chose exact impact shots as the method to quell the violence; she does not say, for example, that exact impact rounds were appropriate for the situation because other methods of force would have been less effective, or because prison procedures required her to use exact impact shots. Notably, the exact impact shots did not quell the violence and the combatants ultimately were subdued with chemical spray, which Plaintiff alleges is a "less potentially life-threatening" use of force. Compl. at 3D. Further, one of the shots hit Plaintiff in the back of the head and the shots allegedly resulted in lasting injuries to Plaintiff's back, head and arm.

The force used in this case lies somewhere between the groin-

United States District Court

For the Northern District of California

kick in <u>Watts</u>, which was excessive, and the double-pepper spray in <u>Clement</u>, which was not.  On these facts, it is for a jury to determine whether the exact impact shots were unnecessary and, if they were, whether Defendant had the requisite malicious intent in firing the shots.

Second, even if exact impact shots were a proper level of force, the necessity of the final three shots remains a triable issue of material fact.  Plaintiff testifies that Defendant initially refused Sgt. Heggerstrom's order to open the section door to allow backup officers to enter the section, and instead fired three additional shots before opening the door.  If a jury were to find Plaintiff's account to be true, it could also reasonably find that Defendant acted with malicious intent in violation of the Eighth Amendment.  For these reasons, the motion for summary judgment is DENIED as to the excessive force claim.

B.   Retaliation

Plaintiff further contends Defendant retaliated against him for stating his intent to file a grievance.  Although the complaint is not perfectly clear, Plaintiff seems to claim that Defendant retaliated by allowing him out of his cell, thereby placing him in a dangerous situation, giving her grounds to fire exact impact shots at him.

Although retaliation is not expressly referred to in the Constitution, it is actionable because retaliatory conduct may tend to chill individuals' exercise of constitutional rights.  <u>See</u> <u>Perry v. Sindermann</u>, 408 U.S. 593, 597 (1972).  Prisoners have a First Amendment right to pursue civil rights litigation in the courts.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005).

14

Consequently, prisoners may not be retaliated against for exercising their right of access to the courts, or for pursuing established prison grievance procedures. <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995), <u>abrogated on other grounds by</u> <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001).

Within the prison context, a "viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes</u>, 408 F.3d at 567-68 (footnote omitted). Accordingly, a prisoner suing prison officials under § 1983 for retaliation must show that he was retaliated against for exercising his constitutional rights and the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. <u>See</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995). Retaliatory motive may be shown by the timing of the allegedly retaliatory act and its inconsistency with previous actions, as well as by direct evidence. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

Plaintiff's retaliation claim survives summary judgment because there is a triable issue of material fact as to whether Defendant placed Plaintiff in a dangerous situation and fired exact impact shots in retaliation for his August 12 statement that he would file a grievance against her. Defendant concedes that on August 12 she searched Plaintiff's cell and he told her he planned to file a grievance regarding the search. Plaintiff testifies, and

15

United States District Court
For the Northern District of California

Defendant denies, that she then threatened to retaliate.  Four days later, Defendant allowed Plaintiff and Powell out of their cells at the same time, a fight ensued, and Defendant shot Plaintiff with exact impact rounds during the fight.

Based on this evidence, a triable issue of material fact has been raised as to whether Defendant let Plaintiff out of his cell and then shot him with exact impact rounds solely because of Plaintiff's stated intent to file a grievance against her and for no legitimate penological purpose.  Therefore, Defendant's motion for summary judgment is DENIED as to the retaliation claim.

C.  Due Process

Plaintiff contends Defendant violated his due process rights by not providing him the opportunity to attend the September 3, 2006 disciplinary hearing, at which he was found guilty, in absentia, of battery on another prisoner and lost ninety days of good time credit.

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Consequently, although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, the due process clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe.  See id. at 556-57, 571-72 n.19.[3]

_____

[3] Wolff established five constitutionally-mandated procedural requirements for disciplinary proceedings: (1) written notice to

United States District Court

For the Northern District of California

While <u>Wolff</u> does not expressly enumerate a prisoner's right to attend his own disciplinary hearing, several circuit courts have held that <u>Wolff</u> implicitly recognizes that a prisoner has a limited right to attend his own disciplinary hearing.  <u>See</u> <u>Thomas v. Van Ochten</u>, 1995 WL 49126, *2 (6th Cir. 1995) (unpublished)(holding prisoner has due process right to attend disciplinary hearing); <u>Young v. Hofman</u>, 970 F.2d 1154, 1156 (2d Cir. 1992) ("The Due Process Clause provides inmates with several protective procedures that they may expect at disciplinary hearings, including the opportunity to appear at the hearing and to call witnesses."); <u>Battle v. Barton</u>, 970 F.2d 779, 782 (11th Cir. 1992) ("[A]n inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment and recognized in <u>Wolff</u>") (per curiam); <u>Moody v. Miller</u>, 864 F.2d 1178, 1180-81 (5th Cir. 1989) (holding prisoners possess limited due process right to attend disciplinary hearings); <u>see also</u> <u>Poon v. Carey</u>, 2008 WL 5381964, at **4-5 (E.D. Cal.), <u>report and recommendation adopted</u>, 2009 WL 1258973 (E.D. Cal.) (finding prisoners possess limited due process right to attend disciplinary hearings).  This Court agrees, and finds that Plaintiff had a limited right to attend his disciplinary hearing.

---

the inmate of the charges against him; (2) a period of no less than twenty-four hours for the inmate to prepare for the appearance before the disciplinary committee; (3) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action; (4) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (5) assistance from another prisoner or prison staff for an illiterate inmate.  <u>See</u> <u>Wolff</u>, 410 U.S. at 564, 566, 570.

17

United States District Court

For the Northern District of California

Plaintiff's due process claim hinges, therefore, on whether, and for what reasons, Defendant denied Plaintiff access to the September 3, 2006 hearing.  On this issue, Plaintiff's submitted evidence differs completely from Defendant's.  Plaintiff asserts: "In no way, shape or form did the Defendant ask me if I wanted to attend a CDC 115 hearing, nor whether I was willing to sign the . . . CDC 128-B refusal slip."  Compl. at 3E.  Defendant, meanwhile, has submitted the RVR, which states: "On Sunday, September 03, 2006, at approximately 1730 hours, WILLIAMS was given the opportunity to attend this disciplinary hearing . . . WILLIAMS declined."  RVR.  The RVR further states: "A CDC 128-B with the signature of two staff witnesses (C/O M. Potter and C/O D. Williams) to [Plaintiff's] refusal was completed."  Id.  Because there is conflicting evidence as to whether Plaintiff had an opportunity to attend the hearing, the motion for summary judgment as to the merits of the due process claim cannot be granted.

III. Qualified Immunity

Defendant argues she is entitled to summary judgment on grounds of qualified immunity.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether the right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation

18

he confronted.  See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

    As discussed above, the facts alleged by Plaintiff could show that Defendant violated his constitutional rights to be free from deliberate indifference to his safety, the use of excessive force, retaliation and the violation of his right to due process.

    The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her conduct was unlawful in the situation confronted.  Saucier v. Katz, 533 U.S. 194, 202 (2001).  Here, Defendant does not argue that the above constitutional rights were not clearly established in 2006, and the Court finds that Plaintiff's rights to be free from deliberate indifference to his safety, the use of excessive force and retaliation were clearly established at that time.

    The Court finds, however, that Plaintiff's limited due process right to attend his disciplinary hearing was not clearly established in 2006.  For a right to be clearly established, the contours of the right must be sufficiently clear so that a reasonable official would know that her conduct violates that right.  Browning v. Vernon, 44 F.3d 818, 823 (9th Cir. 1995).  A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act."  Community House, Inc. v. Bieter, 623 F.3d 945, 967 (9th Cir. 2010).  In the absence of binding precedent, the court may look to all available decisional law, including the law of other circuits and district courts.  See id.

    As discussed above, neither the Supreme Court nor the Ninth

Circuit has addressed the question whether a prisoner has a due process right to attend his disciplinary hearing.  Further, while several other circuits had found, prior to 2006, that such a right exists, see discussion above at 17:1-20, others had found no such right, <u>see</u> <u>Wheeler v. Sim</u>, 951 F.2d 796, 800 (7th Cir. 1992) (holding prisoner does not have due process right to appear at disciplinary hearing and present oral, rather than written, statement of his defense); <u>Francis v. Coughlin</u>, 891 F.2d 43, 48 (2d Cir. 1989) ("Prison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding.")  Based on the above, the Court concludes that the law was not clearly established in 2006 and, consequently, Defendant is entitled to qualified immunity on Plaintiff's due process claim.  <u>See</u> <u>Johnson v. Doling</u>, 2007 WL 3046701, *9 (N.D.N.Y.) (finding prisoners possess limited due process right to attend disciplinary hearings, but prison officials entitled to qualified immunity for ejecting prisoner from disciplinary hearing in 2002 because "neither the Supreme Court nor the Second Circuit has clearly articulated the right of prisoners to be present at disciplinary hearings . . . .").

Defendant also contends that she is entitled to qualified immunity because her conduct was reasonable.  Whether a prison official acted reasonably is a mixed question of law and fact: "It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took.  If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact

20

for the jury to determine.  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995).

When the facts underlying Plaintiff's deliberate indifference to safety and retaliation claims are viewed in the light most favorable to him, a genuine issue of material fact exists as to the reasonableness of Defendant letting Plaintiff and Powell out of their cells at the same time because Plaintiff had threatened to file a grievance against her, in light of her knowledge that it was a violation of prison policy to do so and Plaintiff and Powell were members of different gangs.  Additionally, with respect to Plaintiff's excessive force claim, a genuine issue of material fact exists as to the reasonableness of Defendant's choice to use exact impact rounds to attempt to stop Plaintiff and Powell from fighting, and to continue to shoot exact impact rounds even after she was ordered to open the cell door to allow correctional officers to enter and quell the violence.  In particular, Defendant has not presented evidence that shows why her choice to use exact impact rounds was reasonable, such as testimony regarding her personal experience or training in the use of various methods of force, or prison procedures concerning the appropriate use of force to break up a fight between two inmates.  The Court cannot find that Defendant acted objectively reasonably. Accordingly, qualified immunity is DENIED to Defendant on Plaintiff's deliberate indifference to safety, retaliation and excessive force claims.

                              CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  Plaintiff's motion to amend the complaint is GRANTED; the

                                  21

complaint is deemed verified.

2.   Defendant's motion for summary judgment is GRANTED on qualified immunity grounds as to Plaintiff's due process claim.

3.   Defendant's motion for summary judgment is DENIED as to Plaintiff's deliberate indifference to safety, retaliation and excessive force claims.

4.   The Northern District of California has established a Pro Se Prisoner Settlement Program.  Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference.  The Court finds that a referral is in order now that Plaintiff's claims have survived summary judgment.  Thus, this case is REFERRED to Magistrate Judge Nandor Vadas for a settlement conference.

The conference shall take place within one-hundred-twenty days of the date of this Order, or as soon thereafter as is convenient to the Magistrate Judge's calendar.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten days after the conclusion of the conference, file with the Court a report of the result of the conference.

The Clerk shall provide a copy of this Order to Magistrate Judge Vadas.

This Order terminates Docket nos. 66 and 74.

IT IS SO ORDERED.

Dated: 3/29/2012

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

22