UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| ISAIAH N. WILLIAMS, | No. C 07-04464 CW (LB) |
| Plaintiff, | ORDER RE DISCOVERY DISPUTES |
| v. | [ECF Nos. 116, 121, 122, and 123] |
| D. WILLIAMS, | |
| Defendant. | |

The parties have a discovery dispute. 2/14/13 Joint Letter Brief, ECF No. 116. The court held a hearing on February 28, 2013 and rules as follows on the document requests at issue.

## I. DOCUMENT REQUEST NO. 3

**Document Request No. 3**: Documents sufficient to show the policies and procedures in place for officers during August through September 2006, including, but not limited to, procedures for inmate movement and Post Order 392322.

The part of the request that is disputed is Plaintiff's request for "training manuals for the use of impact weapons (e.g. 40mm launchers [the weapon at issue here], including the 'Impact Munitions Workbook' and any similar manual/policy documents." Plaintiff learned of it in a report about a separate incident at Wasco Prison that says the following:

> The Bureau of Independent Review also found that many of the special characteristics and limitations of the 40mm launcher are not adequately addressed in the department's "Line Staff Impact Munitions Workbook," a training guide for staff on the proper use of approved weapons. In particular, the Bureau of Independent Review found that the workbook contains significant ambiguities concerning the use of direct-impact weapons such as the launcher from an elevated position and a moving target.

Joint Letter Brief, ECF No. 116 at 3 (citing Chivvis Decl. Ex. D, ECF No. 112-4 at 14). The

1 statement is in the context of a discussion about how the control booth officer received insufficient
2 training on the launcher in that he might not have ever fired the weapon in training, may not have
3 been qualified, and might have fired for the first time during an incident. Chivvis Decl. Ex. D, ECF
4 No. 112-4 at 14.

5 Plaintiff argues that the document could establish whether Defendant acted outside CDCR
6 policy, which in turn is relevant to Plaintiff's excessive force claim. Joint Letter, ECF No. 116 at 3.
7 Defendant responds that documents could implicate security and compromise tactical responses. *Id.*
8 at 4.

9 The manual at issue seems to be about how to use the launcher, meaning, it is not about when
10 force should be used (e.g., an inmate disturbance where harm is threatened to another), but how to
11 use it (e.g., not from a height, possibly not with a moving target). Still, training manuals about how
12 to use it *might* be relevant to whether the force used was reasonable. At the hearing, Plaintiff
13 clarified that he sought the following: (1) information or guidance or rules about where to fire from
14 (e.g., height of shooter in relation to the target); (2) anything about when the use of the launcher is
15 appropriate (e.g., whether to use on an inmate-on-inmate situation); and (3 desired location of the
16 impact (e.g., not at the head, mid torso, or legs, or not at a moving target).[1]

17 All of this is relevant. To address CDCR's security concern, the court directs the following.
18 Defendant's counsel shall review the manual and segregate any material responsive to points one
19 through three. The court's view is that disclosure of this information would not necessarily
20 compromise institutional security. Nonetheless, if CDCR thinks it does, it may disclose it pursuant
21 to the heightened order for attorneys' eyes only. If that does not address CDCR's security concerns,
22 it may produce it to the court for an *in camera* inspection. The court trusts that CDCR can devise a
23 way to produce responsive information without compromising institutional security.

24 The parties also bicker back and forth in separately-filed letters (in violation of the court's
25 standing order on discovery) about production of Defendant's training records relevant to her choice

---

[1] The court doubts that the manual would have any information about point two, which fits more into the use of force policy. As defendant's counsel pointed out in her capacity of specially appearing for CDCR, Defendant already produced the use of force policy.

C 07-04464 CW (LB)
2

of the 40mm launcher. *See* ECF Nos. 121, 122, and 123. Defendant apparently testified about her training. Joint Letter, ECF No. 116 at 4. The court's view (based on the discovery disputes earlier in the case) is that the records were responsive to documents requests, and to the extent that they have not been produced, they should be. Defendant's counsel pointed out – and the court does not disagree – that the documents requests Plaintiff served while representing himself are not a model of clarity. Thus, the court does not fault Defendant's counsel for not producing the records so far. Also, as Plaintiff's counsel clarified, Plaintiff is seeking the documents referred to in Defendant's expert report about Defendant's training (presumably in the 2006 time frame). Defendant's counsel represented that she would produce the documents "tomorrow," meaning, by March 1, 2013.

As to the sanctions requests in the separately-filed letters, the court suggested – and the parties agreed at the hearing – that they should both move on. Thus, the sanctions issue is a closed issue.

## II. DOCUMENT REQUEST 9

**Document Request 9: Documents sufficient to show Lewis Powell's [the other inmate's] height, weight, and general appearance on or about August 16, 2006 [the date of the incident].**

Plaintiff alleges that Lewis Powell, who apparently sustained no injuries, was the aggressor and that information about his appearance is relevant. Joint Letter, ECF No. 116 at 5. Defendant raises HIPPA arguments (without citation to any robust authority) and also argues that producing these documents would violate Title 15, California Code of Regulations, § 3370, which prohibits an inmate from having access to another inmate's case record or health files. *Id.* at 6.

The information about height, weight, and appearance is relevant. It is capable of being ascertained by reference to booking information and the booking photo (which Plaintiff can authenticate as to whether Powell looked like that during the relevant time period). Other non-relevant private information can be redacted. Defendant can identify – without actually disclosing them – whether there are contemporaneous documents that establish the information, and if there are not, the documents from the closest time period. Defendant can convey the information. Plaintiff can choose to accept Defendant's representation, and the parties can reach a stipulation on the evidence of height and weight (perhaps with an accompanying booking photograph). Or Defendant can redact all private information and provide it to Plaintiff for verification, and then the parties can

reach a stipulation. At the hearing, the parties agreed to try to problem solve this practically. If they need the court's further assistance in resolving what really is a pretty simple issue, they may contact the court (but the court is confident that they can figure this out).

## III. DOCUMENT REQUEST 10

**Document Request No. 10: Documents sufficient to show the floor-plan of F pod and the D-1 Control Booth on or about August 16, 2006.**

Plaintiff argues that the floor plan evidence is relevant to Defendant's assertion that she could not see from her vantage point whether Mr. Powell had returned from his shower, and he argues that security concerns are protected by designating the document Attorney's Eyes Only. Joint Letter, ECF No. 116 at 5. Defendant responds that release of the floor plans would compromise institutional security. *Id.* at 7.

At the hearing, Plaintiff clarified that he is seeking not the floor plans and full schematics (which could reveal all sorts of information that could compromise institutional security such as locations of weapons). Instead, he wants information relevant to how high Defendant was, what her view was, an ability to relate the height to where Plaintiff was in the shower, and similar information. This information is more like a rough schematic, and the court knows that similar schematics have been introduced in court.

The court can think of many practical solutions that would avoid producing any confidential information. The litigation coordinator can take pictures from the control booth showing what can be seen from there (and omit or blur anything that is not relevant, such as firearms locations). A schematic can be produced that shows distances such as the height of the control tower, the distance to the base, and the distance from the base to the shower.

The court's view is that this production can be made to avoid compromising institutional security. The court directed Plaintiff's counsel to consult with CDCR, show this order to them, and create a plan. If the CDCR has institutional security issues, it may produce the information pursuant to the attorneys' eyes only protective order. If that really does not address CDCR's security concerns, it must provide the information to the court for *in camera* review.

Again, the court believes that the parties can work this out without compromising institutional

C 07-04464 CW (LB)
4

security.

This disposes of ECF Nos. 116, 121, 122, and 123.

**IT IS SO ORDERED.**

Dated:  February 28, 2013

_____
LAUREL BEELER
United States Magistrate Judge