UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ISAIAH N. WILLIAMS,<br><br>            Plaintiff,<br><br>   v.<br><br>D. WILLIAMS,<br><br>            Defendant.<br>_____/ | No. C 07-04464 CW (LB)<br><br>**ORDER RE PLAINTIFF'S MOTION FOR RELIEF REGARDING DISCOVERY ABUSES**<br><br>[RE: ECF NO. 146] |

## INTRODUCTION

This civil rights case involves Plaintiff Isaiah Williams's claims that Defendant Debray Williams, a correctional officer at Pelican Bay State Prison, manifested deliberate indifference to his safety and used excessive force in violation of the Eighth Amendment when she (1) opened Plaintiff's cell door as another inmate left the shower area, which resulted in a fight between the inmates, and (2) then used a launcher and shot Plaintiff with impact rounds. *See* Complaint, ECF No. 1 at 7.[1] The district court referred discovery disputes and issues about evidence preservation and spoliation to the undersigned. *See* ECF No. 54 at 5; RT 3/20/13, ECF No. 137, at 12:1-12.

The current discovery dispute is about (A) photographs that were taken on the date of the

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

ORDER
C 07-04464 CW (LB)

1  incident (August 16, 2006), subpoenaed by Plaintiff from the California Department of Corrections
2  and Rehabilitation (the "CDCR") with a production due date of January 20, 2013, and produced –
3  after representations that they did not exist – on May 7, 2013 after Pelican Bay staff located them in
4  old files, and (B) the production by the CDCR of Defendant's firearms training records only back to
5  July 2006.  Plaintiff seeks the following sanctions for the alleged discovery abuses:  (1) only
6  Plaintiff (and not Defendant) should be allowed to use the photographs during opening statements;
7  (2) Plaintiff should be permitted to state during opening and closing statements that Defendant and
8  the CDCR withheld the photographs because they did not want the jury to see them; and (3)
9  Plaintiff's expert, Mr. Subia, should be permitted to testify as to his disclosed opinions on the
10 inferences he draws from the absence of training records showing Defendant was qualified to be in
11 her post on the day of the incident.  *See* Motion, ECF No. 146.

12     The court held a hearing on June 20, 2013, denies the motion for sanctions, and orders the
13 production of Defendant's firearms training records for the period before July 2006 subject to the
14 parties' stipulated protective order.

15 <center>**STATEMENT**</center>

16 **I. THE PHOTOGRAPHS**

17     On August 16, 2006, Officer Countess took photographs of Plaintiff's injuries and the scene "for
18 identification and evidentiary purposes."  Ex. B, Chivvis Decl., ECF No. 152-2 at 2.  Plaintiff
19 subpoenaed the photographs from the CDCR with a production date of January 20, 2013.  *See*
20 *id.* Ex. C, ECF No. 152-3.  Defendant's counsel (who also represents the CDCR) did not object to
21 the request, but she did not produce the photographs.  By letter dated February 1, 2013, Defendant's
22 counsel said the following about the photographs:

23 > [P]lease be advised that no such photographs exist.  Contrary to the representation in your email of January 28, 2013, it is my understanding that no photographs exist because, for whatever reason, the photographs did not come out.  I have no information that the photographs ever existed and certainly have no information that the photographs were lost or destroyed.  As indicated in the Crime/Incident Report, Correctional Officer Countess indicated that the photographs, once printed, would be retained. [M-0073].  However, there is no indication that there were ever any printed photographs actually in existence.

27 Chivvis Decl., Exh. E, ECF No. 152-7.

28     On March 27, 2013, the parties raised the issue about the photographs with the court by email.

ORDER
C 07-04464 CW (LB)
<center>2</center>

1  *See* ECF No. 140 (the filed copy of the emails).  On April 4, 2013, the court held a hearing.  At the
2  hearing, defense counsel talked about her February 1 letter and said that she had "no information
3  that the photographs ever existed and I certainly have no information that the photographs were lost
4  or destroyed."  Ex. H, Chivvis Decl., ECF No. 152-10 at 5:2-3.  At the hearing, and as memorialized
5  in the undersigned's April 5, 2013 written order, the court directed defense counsel to obtain a
6  custodial declaration to identify what happened so that Plaintiff's counsel would have an evidentiary
7  basis for any spoliation motion.  *Id.*, ECF No. 152-10 at 6; *see* 4/5/13 Order, ECF No. 141 (directing
8  Defendant to provide "as specific a declaration as she can" about the photographs "as soon as she
9  can but no later than April 18, 2013").

10  At this point, Plaintiff contemplated a spoliation motion based on the missing photographs, and
11  the court directed the parties to meet and confer – after Defendant's counsel produced the
12  declaration – about the right format for raising any spoliation motion.  4/5/13 Order, ECF No. 141.
13  Given the fast-approaching trial date, the upcoming settlement conference, and the fact that the
14  CDCR is not a party to the lawsuit, the court suggested that a joint letter brief was a faster and more
15  cost-effective mechanism for raising a spoliation motion.  *Id.*  It nonetheless allowed the parties to
16  select a noticed spoliation motion.  *Id.*

17  In a declaration dated April 15, 2013, Sergeant Countess, who was the officer who took the
18  photographs and who noted in the incident report that photographs were taken, provided the
19  following additional information: (A) in August 2006, he would note in incident reports when
20  photographs were taken and that – when printed – they would be in the evidence room; (B) at the
21  time period relevant to the incident, his unit used an older digital camera that "could be problematic"
22  in that the digital screen would show that photographs were taken, he would place the disk into the
23  evidence room, and sometimes – even though the camera appeared to be working properly – no
24  images would be on the disk when the images were later downloaded to a computer in his unit's
25  complex; (C) he was not responsible for downloading or printing the photographs; and (D) at all
26  times, it was his good-faith intention to properly photograph the subject inmate, location, or
27  evidence.  Countess Decl., Ex. I to Chivvis Decl., ECF No. 152-11 at ¶¶ 3-5.
28  On May 6, 2013, Defendant's counsel told Plaintiff's counsel that the staff at Pelican Bay had

1  searched old files and located photographs taken on the day of the incident, and by letter dated May
2  7, 2013, she produced the photographs. Ex. D to Chivvis Decl., ECF No. 152-4. They show both
3  inmates and their injuries. *Id.*

## II. FIREARMS TRAINING RECORDS

In February 2013, Defendant served an expert report listing "Training Records for D. Williams" as materials that the expert considered. *See* Letter Brief, ECF No. 121. The parties disagreed about whether Plaintiff had requested these documents during discovery and when Defendant should produce them. *See* Order, ECF No. 129 at 2-3. The court held a hearing on February 28, 2013, and in the March 1, 2013 order, held that the training records were responsive to earlier document requests and ordered that "to the extent that they have not been produced, they should be." *Id.* at 3. Plaintiff's counsel clarified that he was "seeking the documents referenced in Defendant's expert report about Defendant's training (presumably in the 2006 time frame)," and thus that was the scope of the production that the parties and the court contemplated at that time. *Id.* Also, the court specifically did not fault Defendant's counsel for not responding previously because Plaintiff issued the document requests, which were "not a model of clarity," when he represented himself. *Id.* at 3.

By letter dated March 1, 2013, Defendant's counsel produced "copies of Sgt. Williams' training records that were provided to [Defendant's expert] Mr. Cope and identified in his report." Ex. K to Chivvis Decl., ECF No. 152-13. The training records start on July 26, 2006 and end on December 17, 2012. *Id.*

The parties discussed the issue further at the April 4, 2013 discovery hearing. Plaintiff's counsel pointed out that the training records started on "July 25 [sic], 2006," less than a month before the incident. ECF No. 152-10 at 3:8-9. His CDCR expert reviewed the records and concluded that there was no training on the weapon she used. *Id.* at 3:12-25. He said that if Defendant had earlier training, he would need the records "from that time" and "[w]e would look for them at least to the beginning of 2006. And we asked [Defendant's counsel] Ms. Stocker about them, and she said that they were unavailable." *Id.* The undersigned pointed out that "unavailable" is different than "they don't exist," noted that one could obtain a custodial declaration about the absence of a record, and directed Defendant's counsel to get such a custodial declaration. *Id.* at 4-6. The court's written

UNITED STATES DISTRICT COURT
For the Northern District of California

order, however, references only the deadline to produce a declaration about the photographs. 4/5/13 Order, ECF No. 141. That is because the main issue was to identify the absence of records relevant to a spoliation motion. *See id.*; *see also* RT 4/4/13, ECF No. 152-10 (making that point clear).

In a declaration in support of her opposition to Plaintiff's motion, Defendant's counsel notes that she has obtained Defendant's complete firearms training record and offers to produce it – if the undersigned orders that production – subject to the terms of the stipulated protective order. Stocker Decl., ECF No. 151 at 7.

**ANALYSIS**

Williams moves for sanctions under the court's inherent authority, Federal Rule of Civil Procedure 37(b)(2), and N.D. Cal. Civil Local Rule 37-4, arguing that Defendant's counsel failed to timely produce evidence and made misrepresentations regarding the same evidence.

Preliminarily, there is no spoliation here. The only issue is the timing of discovery and Defendant's counsel's representations about the discovery.[2] The court sets forth the legal standards and then addresses the merits.

**I. LEGAL STANDARDS**

**A. Sanctions**

When a district court decides to impose sanctions or discipline, it must clearly delineate under which authority it acts to insure that the attendant requirements are met. *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999) (citing *Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) ("For a sanction to be validly imposed, the conduct must be sanctionable under the authority relied on.") (internal quotation marks and citation omitted)). "The imposition of sanctions requires a statement of reasons for the district court's action, including the need for the particular sanctions imposed." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1081 (9th Cir. 2000) ("The imposition of sanctions requires a statement of reasons for the district court's action, including

---

[2] The court authorized only a spoliation motion and not a sanctions motion for late-produced discovery. 4/5/13 Order, ECF No. 141. The point of the court's joint letter process is to require a meet-and-confer for a more efficient and accessible presentation of disputes. As it is, the undersigned had to set out the timeline showing the facts, which the meet-and-confer would have forced the parties to do.

ORDER
C 07-04464 CW (LB)
5

1  the need for the particular sanctions imposed.") (citing *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d
2  824, 830 (10th Cir. 1990) ("If the district court ultimately imposes sanctions, detailed findings are
3  necessary to identify the objectionable conduct and provide for meaningful appellate review.")).

### 1. Rule 37

Rule 37 provides a court with authority to sanction a party or attorney for discovery violations, including for spoliation and misrepresentations. First, Rule 37(b)(2)(A) provides that "[i]f a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." "These may include . . . (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; [and] . . . (v) dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A). These sanctions are not available unless a court's discovery order has not been obeyed. *Id*. "The definition of 'order' in Rule 37(b) has been read broadly." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).[3] Sanctions may be imposed even for violation of a court's oral order, as long as a party has "unequivocal notice that a court has asked that certain documents be produced." *Id*. (citing *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974)). Also, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Second, Rule 37(c)(1) provides that:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e),

---

[3] But the Ninth Circuit also has explained that "Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence; Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse." *Unigard*, 982 F.2d at 368 (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379-80 (9th Cir. 1988); *United States v. National Medical Enters.*, 792 F.2d 906, 912 (9th Cir. 1986); *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1338-39 (9th Cir. 1985)).

the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

    (B) may inform the jury of the party's failure; and

    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). A sanction under Rule 37(c)(1) does not require a violation of a court order as a prerequisite. *Compare* Fed. R. Civ. P. 37(c)(1) *with* Fed. R. Civ. P. 37(b)(2)(A); *see* Schwarzer, Tashima, and Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. before Trial § 11:2340-41 (The Rutter Group 2011).

### 2. Inherent Powers

Under the "American Rule," each party to a lawsuit is generally responsible for its own attorneys' fees. *Hensley v. Eckerhart*, 471 U.S. 424, 429 (1983). Nonetheless, federal courts have the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (cited by Opp'n, ECF No. 37 at 12; and Reply, ECF No. 39 at 5), *accord Virginia Mason Hosp. v. Washington State Nurses Association*, 511 F.3d 908, 917 (9th Cir. 2007) (applying standard to challenge to arbitration award).

## II. THE PHOTOGRAPHS

Spoliation is no longer an issue because the photographs were found and produced on May 7, 2013, in advance of Plaintiff's May 16, 2013 motion for sanctions. Plaintiff argues that the production is late and – as a sanction for that late production – asks that (A) only Plaintiff (and not Defendant) be permitted to use the photographs during the opening statements, and (B) Plaintiff be permitted to argue the inference in "opening and closing statements that Defendant and the [CDCR] withheld the photographs because they did not want the jury to see them." *Id.*

The first issue is that the CDCR is not a party. Plaintiff argues for the adverse inference anyway because Defendant and CDCR are in privity. *Id.* at 6 (the CDCR is paying for the costs of the defense). Plaintiff cites only cases discussing privity in the context of preclusion doctrines and

ORDER
C 07-04464 CW (LB)

7

1  duplicative litigation. *See* Motion at 6. The court need not decide the issue because the outcome
2  would not change. The requested sanctions still are in the court's power because counsel's
3  representations and disclosures are at issue, not just the CDCR's response.

4      Turning to that issue, the court denies Plaintiff's requested sanctions. First, once Plaintiff's
5  counsel was appointed, he started scrubbing the evidence to make sure he had everything. When he
6  noticed things that were missing, he asked Defendant's counsel. Second, it was only at that point
7  (around late January 2013 and early February 2013) that the parties started to identify more
8  granularly what needed to be produced (such as training records or photographs identified in an
9  incident report). Third, no one wore their investigative hats to figure out where evidence might be
10 or how to nail down any spoliation issues. In almost every dispute, the undersigned – and not the
11 parties – pointed out along the way who might know, how to develop a record about the absence of
12 evidence, and how to provide information that was relevant without compromising institutional
13 security. *See, e.g.,* RT 4/4/13, ECF No. 152-10 (devising strategy for custodial declarations and
14 characterizing the issues as easy, not hard); 4/5/13 Order, ECF No. 141 (setting timeline and
15 managing process for spoliation resolution); 3/1/13 Order, ECF No. 129 (training records, other
16 inmate records, and control booth and F pod evidence).

17     What happened was that as a result of that case management, Defendant's counsel subsequently
18 did her due diligence to make sure that the CDCR looked everywhere for evidence. From start
19 (January subpoena for January 20 production and February 1 letter) to finish (May 7 disclosure), the
20 process to find the photographs took a little over three months. The timing does not prejudice
21 Plaintiff's trial, and the evidence helps Plaintiff's case, as Plaintiff acknowledges. Motion, ECF No.
22 146 at 5 (the photographs "change the dynamics of the entire case, as they prove (as no other
23 document could) that Plaintiff's injuries were real and significant"). Plaintiff nonetheless argues
24 that he is prejudiced because he "cannot fully develop the record surrounding the photographs" and
25 Defendant's counsel's misrepresentations "put a cloud over the completeness of other aspects of the
26 production in this case." *Id.* at 8. These conclusory allegations do not establish any prejudice or a
27 basis to grant the sanctions that Plaintiff requests.

28     The undersigned observes that any sanctions regarding argument or adverse inferences really are

UNITED STATES DISTRICT COURT
For the Northern District of California

for the trial court. Still, the issue of whether behavior is sanctionable is for this court in the first instance. Based on this record, the court's finding is that Defendant's counsel conveyed in good faith what the CDCR told her about the photographs, acted diligently (after the court's involvement in the dispute) to uncover anything about the photographs, and, as a result of her diligence, found and produced the photographs enough in advance to avoid any prejudice.

## III. THE TRAINING RECORDS

As a sanction for Defendant's failure to produce her training records before July 2006, Plaintiff asks that his "expert, Mr. Subia, be permitted to testify as to his disclosed opinions on the inferences he draws from the absence of training records showing Defendant was qualified to be in her post on the day of the incident." Motion at 2. Defendant responds that she was supposed to produce only the records that her expert relied on, now has obtained firearms training records that pre-date July 26, 2006, and will produce them subject to the protective order if the court orders it.

It is true that as of February 28, 2013, the parties discussed production only of records that Defendant's expert used. *See* 3/1/13 Order, ECF No. 129 at 3. But by the April 4, 2013 hearing, the express discussion was that Defendant had produced firearms training records that were given to her expert, they started on July 26, 2006, and Plaintiff wanted earlier records "at least to the beginning of 2006." RT 4/4/13, ECF No. 152-10. The court directed a custodial declaration about the absence of records and to make sure they really were non-existent as opposed to "unavailable." *Id.* That being said, the written order addressed only the main issue: the missing photographs. 4/5/13 Order, ECF No. 141.

The court's view is that there can be no mistake about what was said at the hearing. Still, particularly given the court's written order that addressed only the missing photographs, the solution now is that Defendant must produce the earlier firearms training records immediately subject to the protective order. If they confirm that there is no training, then the evidentiary lay of the land is unchanged, and no sanction is needed. (The lack of training is relevant, but the scope of the expert's testimony is the trial court's decision, and the parties can raise that issue (as they have already) during the *in limine* process.) Plaintiff fears sandbagging, but that seems unlikely. Still, the records will reveal whether that happened. The parties should raise any issues immediately in a joint letter

ORDER
C 07-04464 CW (LB)
9

brief.[4]

## CONCLUSION

The court denies Plaintiff's motion for sanctions and orders production of Defendant's firearms training records for the period before July 26, 2006 subject to the parties' stipulated protective order.

This disposes of ECF No. 146.

**IT IS SO ORDERED.**

Dated: June 20, 2013

_____
LAUREL BEELER
United States Magistrate Judge

---

[4] Again, the undersigned observes that had the parties used the joint letter process, which is the only process the court authorized for any issue other than spoliation of the photographs, the court would have ordered this process in mid-May as part of its real-time approach to resolving discovery disputes. By using a noticed motion on the ordinary five-week schedule, this result comes on the eve of trial. That is inconvenient to the parties and the district court (to the extent that it implicates the timing for the resolution of any ancillary issues such as the scope of testimony). It is an inefficient process that helps no one.